, counsel for the appellant, please. Good morning, Judge Raymer, Judge O'Scanlan, Judge Bivey. Could I ask you to speak a little louder and also a little closer to the microphone? Yes, sir. Is that okay? I wish to reserve a little more than two minutes for rebuttal. I'll try to cut it off at seven minutes. I'm Robert Chicoine. I am appearing on behalf of the defendant and appellant, K.B. Kim. Your Honor, under the plea agreement at issue, the government made certain promises. It breached those promises, and as a result, there was a significant increase in the offense level assigned by the judge. There is no factual dispute as to the terms of the fee agreement or the actions of the U.S. Attorney's Office in this case. So our position is that essentially this is an issue of law. Incidentally, we're on plain error review here, are we not? Pardon me? We are on plain error review here. It's our position that we are not, Your Honor, and that the standard of review is de novo and it's not plain error, and it's not plain error because we raised the issues at various times, both at the pre-sentence report and at the hearing, and that if the Court should determine the merits, what is it that the government did not do that it promised to do? Okay. It promised to do essentially three things. First, it promised not to seek an upward adjustment for obstruction of justice and other types of enhancements. Secondly, it agreed and promised not to establish that the tax loss in this case exceeded $199,000. In other words, the criminal tax loss would not exceed $199,000, and the parties understood, certainly an objective party would have understood, that the government would not argue that the tax loss exceeded $199,000. The government also agreed as to relevant conduct, that it would limit the scope of relevant conduct to a specific number of clients of Ms. Kim. Of course, the problem is in any plea agreement, they're subject to approval by the trial judge, and Judge Zille obviously had a little different view. It's clear, Your Honor, that both Mr. Colvin, who argued the case at the sentencing, and Mr. Sullivan pointed out that there was a plea agreement. Our basic point here, Your Honor, is while Judge Zille is correct, he is not bound by the terms of the plea agreement. The prosecutor is, and that's a key distinction. Now, can you just, you know, explain to me why, it seems to me what happened here, just in basic terms, is that the district court took a look at the PSR and went apoplectic and said, you know, this agreement doesn't reflect the severity of what went on, and proceeded, in effect, to take over the sentencing proceeding himself. And it was he who initiated questioning about obstruction of justice. It was he who initiated questioning about a lot of things. So why the government kept coming back, basically, and saying, yes, but, Judge, you know, we had an agreement, and here's what we agreed to, and here's what I believe Ms. Kim understood. Why is there real error here? Your Honor, I would respectfully agree. I understand that Judge Zille took over, at some point, examination of the witnesses. But what happened here is Judge Zille, first of all, in obstruction, indicated that based on the pre-sentence report, he was not inclined to an upward adjustment. Yes, and then he asked for the witnesses to be put on the stand. What he did do, Your Honor, if you look at the record, what he did is he asked the government if it was ready to put on witnesses and if they were there. The government said yes. It is the government that called the witnesses, Your Honor. It is the government that conducted the examination. And let's take the obstruction charge, because I believe that's the most clear, because there is a positive, affirmative representation and promise that we bargained for that they would not seek an upward adjustment. During the testimony of the revenue agent, after Judge Zille finished his examination, and first it was started by Mr. Sullivan, the agent indicated that she really wasn't the one that investigated the obstruction. Mr. the prosecutor actually got up and, under redirect, asked her who that was. He said, was it not Mr. Grossman? It is then that the court said, well, are you going to call Mr. Grossman? And then what the prosecutor did, actually called Mr. Grossman for the sole purpose of discussing obstruction. And based upon that testimony, the court found that there was obstruction. Our position is that this isn't the typical kind of case where the government says, we're not going to recommend, we will take no position. The government specifically represented it would not seek an upward adjustment as to obstruction, for example. And had those agents not testified, the court, by its own statements, would have not found, we believe, what it did. And even if it didn't make any difference, the cases that we cite say that the government's got to cut four corners. If you bargain for a deal, you're entitled to it. And that means the government can't make any comments that might suggest they're in agreement with the pre-sentence report, let's say, for obstruction. They can't make any comments that would suggest that there is a higher tax loss when they agreed that the tax loss was only 199. Well, what should the AUSA have done? Well, first of all, I believe. In front of Judge Zille, who was raising these questions. You know, I think what the prosecutor should have done, and he did point out and call to the Court's attention there was a plea agreement, is not put on his evidence that he was bound not to present and make available and actually conduct cross-examination, which certainly encouraged and actually elicited opinions of the court. And so I think the judge should have said, well, you know, let's put on witnesses. I don't think. The government should have refused. Your Honor, I don't think the judge actually said put on your witnesses. He first asked, do you have witnesses? You're right. He didn't. He said let's put them on the stand. He said first. That's what he said. First he said, are your case agents ready to testify? Yes. Under the circumstances, there should have been no reason for those case agents to testify other than, let's say, Mr. Grossman. I understand, but my question is very pointed. When the district judge says, are they ready to testify, let's put them on the stand, what's anybody supposed to do? Say no? I think what the prosecutor should have done in that case is said, Your Honor, we have made a commitment that we would not argue and we would not present evidence as to obstruction, that Mr. Grossman's testimony would relate to obstruction, and if Your Honor, for example, wants to call him individually, maybe that's possible. Even by the same token, why shouldn't counsel for the defense have stood up and screamed Wait a minute. That is a total breach of the plea agreement for the court, for the government, for anybody to put on any evidence with respect to obstruction. Well, Your Honor, counsel for the defense did call to the court's attention, both in the pre-sentence report where counsel says, I object to the consideration of material and evidence relating to obstruction because it's contrary to our plea agreement. At the hearing, he reiterated those objections and he did state, after Judge Zille heard the evidence, he said, do you have any objections? And counsel got up and said, I understood under the plea agreement that the government was not going to ask for an upward adjustment and basically objected to the fact that this evidence was received and the court said, well, fine, I'm going to go ahead and find anyway. Counsel, you're down to about a minute. You may want to reserve. Yes, Your Honor, I do. Thank you. We'll hear from the government. Mr. McKay. Good morning. May it please the Court. I'm John McKay, the United States Attorney for the Western District of Washington on behalf of the government. I'd like to go right to Your Honor's question with regard to the claim by the defendant appellant as to what error the government committed here. The appellant says here that the government agreed not to put on any evidence from the special agents. And I would point out that the reason the special agents were present in the courtroom at the district court was because the defendants were contesting the loss amount claimed by the government. They were there in order to testify because the defendant put that question in issue. Counsel, the plea agreement called for you to, that you stipulated that the tax loss would not exceed $199,000. And I understand that I think the bottom end was that there was nothing less than $25,000, and then you and this Kim disputed what the range was between $25,000 and $199,000. So you were entitled to put on some proof there. The relevant conduct was going to be limited, I believe, to 65 clients. If you had added up all of 65 of those clients, does that add up to $199,000? Is that where the $199,000 figure comes from? It does not. As I understand, the exhibit that was presented at trial, the number was about $165,000. It was even less. It was less than $199,000. That is correct. So to get to the $199,000, you would have had to have put on evidence from more than 65 clients that you agreed to. That's correct. That is correct. And I would point out that as to the stipulation, that document, of course, was the plea agreement, which was a joint recommendation of the district court for purposes of sentencing. And as I pointed out, it's the defense who raised the question of what the actual number was. And I simply say that in terms of looking back on a plain error standard as to whether an injustice occurred here. The issue was put before the court by the defense. There was no stipulation before the court evidentiary. The stipulation was simply for purposes of sentencing. So the special agents were there. And certainly the court, the district court, is entitled to consider all of the evidence if it chooses to go beyond agreements in the plea agreement. The probation department having heard from the special agents independently and now reporting to the court. As unusual as it is, the reason that appellants aren't before you arguing that the court abuses discretion is because we know well that the court simply has discretion to disregard the agreement of the parties. So the government is in the unusual position here today of saying that the circuit court should affirm the district court, but we certainly recognize and respect the district court's ability and discretion to go beyond the agreement of the parties. I think it's clear from the case law here that the responsibility of both the case agents and the prosecutor in the district court was to honestly answer the questions of the court. And it was clearly the court that had an interest in knowing what the basis was for additional damages the government may have suffered. The government, for purposes of sentencing, had said we'll agree to the 65 cases, induced, received the plea, the parties agreed to the plea agreement. However, there were many different views of what damages may be. And I really want to make this point to the court that the material before probation came to probation because there were many different ways to calculate the loss that the government could have suffered. In other words, it would have been asserted at trial. The agents simply gave all of that evidence to the probation department. And obviously, that piqued the interest, then, of the district court. And for purposes with respect to the court. Was there any indication that the government was required not to provide that information to the probation department? None at all, Your Honor. And I think in terms of what occurred at the district court, my reading of the record is, I think, the same as yours, Judge Reimer. I believe it's pretty clear that Judge Zille asked if the agents were present, that Judge Zille wanted to hear from the agents. And obviously, the court, I suppose the court could have conducted all aspects of the examination. But it's clear that the government at the district court was attempting to provide the district court with a basis for limiting its plea agreement to 65 cases. It's also pretty clear in the end, as the court stated, the district court stated, that it didn't agree. That, in fact, the government had suffered greater loss and the court was going to impose a sentence accordingly. And I think that is the facts, the undisputed facts of the case on appeal. And finally, if there is any ambiguity, and I don't believe there is any in the record, it is true that the defendants and the appellants here did not raise a claim or a post-trial motion or a motion at the end of the sentencing that the government had breached the plea agreement. The district court never had the opportunity to go in and make it even more clear, although I believe it's clear enough, nor was the government given an opportunity to respond to a claim by the defendants that they had breached its agreement. That is only made on appeal. And I believe the appropriate standard for review is plain error. Thank you. Thank you, counsel. Mr. Chicoine, you have some reserved time. Thank you, Your Honor. First of all, I wish to point out to the panel that the issue of the tax loss was conceded by the defense. It was made known to the court. There was no issue about tax loss, no reason for the hearing. But, counsel, there was a dispute as to what the amount of the tax loss was. Up to $199,000. Right. But you were prepared to try and limit that to $25,000. Your Honor, what happened is the facts show that counsel, as a result of Judge Zille raising an issue about the scope of relevant conduct, conceded both before the hearing and at the hearing that we would agree that it was $165,000. And under that, assumed that there would be no more testimony. In fact, released our witness. I also want to point out, Your Honor, that there are a number of different kinds of breaches here. One of which, not the least of which, are comments. Even if you assume that Judge Zille was going to call these witnesses, the government can't seek, it can't commit affirmative conduct for a higher tax loss or a higher obstruction. And what the prosecutor did, when he pointed out there was a plea agreement that talked about $199,000, the court said, well, I think the evidence strongly disagrees with that. And it's much higher. And what does the prosecutor do? On Excerpt of Record 125, he says, Your Honor, I can't disagree with that. Meaning he can't disagree that the evidence strongly suggests amounts greater than $199,000. Thank you, counsel. Your time has expired. I appreciate it. I appreciate it, Your Honor. Thank you very much. The case just argued will be submitted for decision. And we will hear argument in Reynolds v. TPI.
judges: O'scannlain, Rymer, Bybee